**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CLARENCE ARVIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1076 |
| | § | |
| DODEKA, LLC, HILCO RECEIVABLES | § | |
| LLC, SANCHEZ LAW FIRM, and | § | |
| WEINSTEIN & RILEY, P.S., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The summary judgment motions in this case turn on the statute of limitations for the Federal

Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* The plaintiff, Clarence

Arvie, alleges that the defendants, Dodeka, LLC; Hilco Receivables LLC; the Sanchez Law Firm;

and Weinstein & Riley, violated the FDCPA; the Texas Debt Collection Practices Act (TDCPA),

TEX. FIN. CODE § 392.001, *et seq.*; and the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS.

& COM. CODE § 17.01, *et seq.,* by attempting to collect a debt after Arvie settled it with Hilco.

Arvie filed this suit on April 10, 2009, naming Dodeka, the Sanchez Law Firm, and Hilco.

On September 17, 2009, he amended his complaint to add Weinstein & Riley as a defendant. The

FDCPA has a one-year statute of limitations. Arvie alleges that the fact that Hilco sold his debt after

it had been settled and that Weinstein & Riley sent a collection letter and had other communications

with him on Dodeka's behalf, all before April 10, 2008, violated the FDCPA. Arvie does not allege

that Hilco violated the FDCPA after April 10, 2008. Arvie does allege FDCPA violations by the

Sanchez Law Firm, Weinstein & Riley, and Dodeka between April 10, 2008 and September 17,

2008, in the form of additional collection letters and other communications by Weinstein & Riley and the Sanchez Law Firm on Dodeka's behalf.  Arvie also alleges FDCPA violations by Dodeka, Weinstein & Riley, and the Sanchez Law Firm after September 17, 2008, in the form of a state-court collection lawsuit filed and served on Dodeka's behalf, and a notice of outstanding debt on Weinstein & Riley letterhead attached to the summons and petition.

Dodeka, Hilco, and Weinstein & Riley filed separate motions for summary judgment, (Docket Entry No. 44, 46, 50, 51, 54, 55).  Arvie responded to each, (Docket Entry Nos. 47, 61, 63), Hilco and Weinstein & Riley replied, (Docket Entry Nos. 52, 68), and Arvie surreplied to Weinstein & Riley, (Docket Entry No. 60).  Each motion for summary judgment argues that limitations bars Arvie's FDCPA claims and that this court should decline to exercise supplemental jurisdiction over the remaining state-law claims.  Based on careful review of the pleadings; the motions, responses, and replies; the record; and the applicable law, this court grants Dodeka's motion for summary judgment in part and denies it in part; grants Weinstein & Riley's motion for summary judgment in part and denies it in part; and grants Hilco's motion for summary judgment.  The reasons are set out in detail below.

## I.    Background Facts

Many of the relevant facts are undisputed.  In 2006, the plaintiff, Clarence Arvie, accumulated a $6,900.64 debt on his Bank of America credit card account.  Bank of America sold the delinquent account to one of the defendants, Hilco Receivables, LLC.  (Docket Entry No. 18-1, Ex. A, Hilco Sale Agreement).  On September 27, 2006, Arvie received a collection letter from FMA Alliance stating that the creditor on the account was Hilco and that the debt had been purchased from the Bank of America.  Through counsel, Arvie negotiated a settlement agreement

with Hilco's collection agent, FMA Alliance LTD.   Under the agreement, Arvie agreed to pay $2,514.36[1] by January 26, 2007 to settle the account.  On January 16, 2007, FMA Alliance sent Arvie a letter confirming the settlement agreement.  This letter again identified Hilco as the creditor.  (Docket Entry No. 18-1, Ex. B, FMA Settlement Letter).  Through his counsel, the Seideman Law Firm, Arvie paid the full settlement amount on January 19, 2007.  (Docket Entry No. 18-1, Ex. C, Seideman Payment Letter).  The defendants do not dispute when or that Arvie settled the account.

On March 7, 2007, Hilco sold Arvie's account to Hudson & Keyes, LLC, a third-party debt buyer.  (Docket Entry No. 18-1, Ex. D, Hudson & Keyes Sale Agreement).  Hilco claims that when it sold the account to Hudson & Keyes, it did not know of the settlement FMA Alliance had reached with Arvie.  Hilco asserts that FMA Alliance did not relay the information about the settlement until after the sale to Hudson & Keyes.  On June 6, 2007, Hilco, having learned of the settlement, repurchased the Arvie account from Hudson & Keyes and closed it.  (Docket Entry No. 51-2, Exhibit B, Affidavit of Greg Neely).  On June 8, 2007, Hilco informed the credit bureau that Arvie's account was settled in full.  (Docket Entry No. 63-3, Ex. 4, Account Notes of Hilco).  On January 22, 2008, Hilco mailed Arvie a Form 1099c reflecting the forgiveness of the Bank of America debt.  (Docket Entry No. 63-6, Ex. 15, Form 1099c).

The same day that Hudson & Keyes purchased Arvie's account from Hilco, March 7, 2007, Hudson & Keyes sold the account to Dodeka.  (Docket Entry No. 18-1, Ex. E, Dodeka Sales Agreement).  Arvie alleges that Dodeka "immediately placed [his] account with a collection

---

[1]   In his amended complaint, Arvie alleged that he agreed to pay $2,814.36 to settle the account.  (Docket Entry No. 18, ¶ 10).  The letter sent by FMA reflecting the settlement states that Arvie agreed to pay $2,514.36.  In subsequent briefing, Arvie also identifies the settlement amount as $2,514.36.  (Docket Entry No. 63, at 4).

agency," defendant Weinstein & Riley.  (Docket Entry No. 18, ¶ 13).  Arvie's affidavit states that on May 4, 2007, he received a collection call from Weinstein & Riley.  (Docket Entry No. 63-5, Ex. 12, Arvie Affidavit, ¶ 8).  On May 15, 2007, he received a Weinstein & Riley collection letter dated April 27, demanding $6,900.64—the original delinquent amount before the settlement—on Dodeka's behalf.  (*Id.*).  The letter informed Arvie that "Weinstein & Riley . . . is national legal counsel for DODEKA, L.L.C., the owner of your credit card account with BANK OF AMERICA." (Docket Entry No. 18, Ex. F., Apr. 27 Collection Letter).  Arvie alleges that the letter demanded "immediate" payment, threatened legal action, and  "[overshadowed] [Arvie's] rights of dispute." (Docket Entry No. 18, ¶ 14).  Arvie forwarded the letter to the Seideman Law Firm "so that they could notify [Weinstein & Riley] of the settlement and attorney representation."  (Docket Entry No. 63-5, Ex. 12, Arvie Affidavit, ¶ 8).  Arvie alleges that the Seideman Law Firm contacted Weinstein & Riley to dispute the debt and advise that Arvie had legal representation.  Arvie alleges that Weinstein & Riley "continued to contact [Arvie] directly via telephone," (Docket Entry No. 18, ¶¶ 15–16).  Neither Arvie's affidavit nor the summary judgment documents evidence these continued phone contacts.  The only phone call described in the summary judgment evidence is the May 4, 2007 telephone call Arvie refers to in his affidavit.

Arvie stated in his affidavit that neither the April 2007 letter from Weinstein & Riley nor other information revealed that Hilco had sold the account.  Arvie stated, "it appeared to me from this correspondence that maybe Dodeka was claiming to have bought my account from Bank of America as Hilco had claimed they had done in 2006."  (Docket Entry No. 63-5, Ex. 12, Arvie Affidavit, ¶ 8).  The record shows that Weinstein & Riley sent two additional letters, one on August 18, 2008 and another on September 11, 2008.  (Docket Entry No. 18-1, Exs. G–H, Sept. 11

Collection Letter, Aug. 18 Collection Letter).  Arvie claims that he did not receive the August 18, 2008 letter because it was sent to an old address.  (Docket Entry No. 63-5, Ex. 12, Arvie Affidavit, ¶ 9).

In August 2008, Arvie also received collection letters from the Sanchez Law Firm on Dodeka's behalf.  Arvie alleges that although he and the Seideman Law Firm informed the Sanchez Law Firm about the settlement and about representation by counsel, the Sanchez Law Firm continued to call Arvie and send collection letters.  (Docket Entry No. 18, ¶¶ 19–22).  Arvie did not, however, refer to such calls or letters in his affidavit and did not submit any documents reflecting such calls or letters.

On November 24, 2008, Dodeka, represented by the Sanchez Law Firm, filed suit against Arvie in state court in Jefferson County, Texas.  On December 13, 2008, Dodeka served Arvie with process.  (Docket Entry No. 47-1, Ex. 4, Service of Process).  Attached to the summons and petition was a notification, on Weinstein & Riley letterhead, that stated,

> Weinstein & Riley is the national legal counsel for the Plaintiff in this case.  The debt described in the attached legal document(s) is due and unpaid, and written demand for payment was requested more than thirty (30) days prior to this notice.
>
> A lawsuit has now been filed against you by legal counsel on behalf of the Plaintiff to collect the amount due.
>
> If you would like to resolve this matter without further legal action and reach an amicable resolution by making arrangements for payment of the debt, please call the following number . . . .

(*Id.*).  In all-capital letters, the letter also stated, "This is an attempt to collect a debt.  Any information obtained will be used for that purpose." (*Id.*).  Also attached was an affidavit from a Hudson & Keyes employee stating that Hilco had sold Arvie's account to Hudson & Keyes.  (*Id.*).

5

Arvie asserted in his affidavit filed in this lawsuit that this was the first information he received that Hilco had sold his account to Hudson & Keyes, which had in turn sold the account to Dodeka. (Docket Entry No. 63-5, Ex. 12, Arvie Affidavit, ¶ 11).

Arvie appeared before the state court and presented proof of the settlement.  Through the Seideman Law Firm, Arvie also contacted FMA Alliance for assistance with the lawsuit.  Arvie alleged that FMA Alliance notified the Sanchez Law Firm of the settlement.  (Docket Entry No. 18, ¶¶ 23–26).  In February 2009, the Sanchez Law Firm nonsuited the Jefferson County case.  (Docket Entry No. 61-2, Ex. 7, Order of Nonsuit).  Arvie alleged that "[s]ince that time, [the Sanchez Law Firm] has refused to return phone calls or respond to any correspondence from [Arvie] in regards to this account."  (Docket Entry No. 18, ¶ 28).

On April 10, 2009, Arvie filed this lawsuit against Hilco, Dodeka, and the Sanchez Law Firm.  (Docket Entry No. 1).  On September 17, 2009 he amended his complaint to add Weinstein & Riley.  In his amended complaint, he alleged that Dodeka, Hilco, the Sanchez Law Firm, and Weinstein & Riley violated the following FDCPA provisions:

(1)     communicating with a consumer known to be represented by an attorney, 15 U.S.C. § 1692c(a)(2);

(2)     engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," § 1692d;

(3)     using "false, deceptive, or misleading representation or means in connection with the collection of a debt," § 1692e, specifically,

(a)     falsely representing "the character, amount, or legal status of any debt," § 1692e(2)(A),

(b)     "threatening to take action that cannot legally be taken," § 1692e(5),

©     using "false representation or deceptive means to collect or attempt to collect any debt," § 1692e(10); and

6

(4)     using "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f.

(Docket Entry No. 18, ¶¶ 32–33).

Weinstein & Riley, Hilco, and Dodeka[2] each moved for summary judgment.  The Sanchez Law Firm has not moved for summary judgment.  The motions assert that Arvie's FDCPA claims are barred by the statue of limitations and ask this court to decline to exercise supplemental jurisdiction over Arvie's remaining state-law claims.

## II.     The Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402

---

[2]     Dodeka also moved for leave to file an amended answer and cross-claim.  (Docket Entry No. 53).  The motion seeks to amend a cross-claim against Hilco and add the statute of limitations as an affirmative defense against Arvie.  Dodeka's proposed amended cross-claims only raise state-law claims.  (Docket Entry No. 53, Ex. 3, at 7–9).  Because this court is dismissing Arvie's claims against Hilco and ruling on Dodeka's motion for summary judgment based on the statute of limitations, this motion is denied as moot.

F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56© burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F .3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.    The Fair Debt Collection Practices Act

The FDCPA  seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can make with a debtor. *See* 15 U.S.C. § 1692. It prohibits communicating with a consumer known to be represented by an attorney, *id.* § 1692c(a)(2); engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," *id.* § 1692d; using "false, deceptive, or misleading representation or means in connection with the collection of a debt," *id.* § 1692e; and "using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. The

FDCPA lists conduct prohibited by §§ 1692e and 1692f.  *See id.* § 1692e(1)–(16), § 1692f(1)–(8).

The prohibitions listed include "the false representation of . . . the character, amount or legal status

of any debt" and "the use of any false representation or deceptive means to collect or attempt to

collect any debt," *id.* § 1692e(2)(A), (10), and "[t]he collection of any amount (including any

interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).  "To

determine whether a particular collection practice violates the FDCPA, the Court 'must evaluate any

potential deception in the letter under an unsophisticated or least sophisticated consumer standard.'"

*Castro v. Collecto, Inc.*, 668 F. Supp. 2d 950, 959 (W.D. Tex. 2009) (quoting *Gonzalez v. Kay*, 577

F.3d 600, 603 (5th Cir. 2009)).

The FDCPA has a one-year limitations period.  "An action to enforce any liability created

by [the FDCPA] may be brought in any appropriate United States district court . . . within one year

from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "For statute-of-limitations

purposes, discrete violations of the FDCPA should be analyzed on an individual basis."  *Solomon*

*v. HSBC Mortg. Corp. (USA)*, No. 09-6293, 2010 WL 3069699, at *3 (10th Cir. Aug. 6, 2010).

**B.      Remanding State-Law Claims When the Federal Claim is Dismissed**

As a general rule, when a district court's jurisdiction is based on a federal question, the court

has supplemental jurisdiction "over all other claims that are so related to the claims in the action

[providing the federal question] that they form part of the same case or controversy under Article

III." 28 U.S.C. § 1367(a).  "The question under section 1367(a) is whether the supplemental claims

are so related to the original claims that they form part of the same case or controversy, or in other

words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Courts are not required to exercise supplemental jurisdiction whenever § 1367(a) authorizes them to do so.  Section 1367(c) gives a district court discretion to decline to exercise supplemental jurisdiction over a state law claim if  "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  In deciding whether to exercise supplemental jurisdiction, a court is "guided by the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

If the federal claims are dismissed, the decision to exercise or to decline supplemental jurisdiction over the remaining state-law claims is within the district court's discretion.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866–67 (2009).  Although the Fifth Circuit has stated that its "general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 446–47 (5th Cir. 2002) (internal quotations omitted).  In deciding whether to retain supplemental jurisdiction over the remaining state-law claims, a court is guided by the same factors for deciding whether to exercise supplemental jurisdiction. *Brookshire Bros.*, 554 F.3d at 602.  The Fifth Circuit has found that a district court abuses its discretion in declining to exercise supplemental jurisdiction over remaining state-law

claims when the remaining state-law issues are not difficult and the district court is intimately

familiar with those issues because the case was pending for a long period, produced voluminous

discovery, had numerous depositions and discovery disputes, and required significant consideration

of multiple motions.  *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227–28 (5th Cir. 1999).  The

Fifth Circuit has also found that the district court abuses its discretion in retaining jurisdiction over

state-law claims after dismissing the federal-law claims when the proceedings are at a relatively

early stage, discovery is not completed, there is no indication that the district judge has substantial

familiarity with the merits, and trying the remaining issues in state court would not impose any

significant additional burden on the parties such as repeating the effort and expense of discovery.

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587–89 (5th Cir. 1992); *see also*

*Brookshire Bros.*, 554 F.3d at 603.

## III.     The Motions by Dodeka and Weinstein & Riley[3]

Arvie filed suit on April 10, 2009.  He added Weinstein & Riley as a defendant on September

17, 2009.  In its motion for summary judgment, Weinstein & Riley argued that all  Arvie's claims

against it were barred by limitations because its last communication to Arvie was the September 11,

2008 collection letter.[4]  In his response, Arvie points out that the filing and service of the state-court

---

[3]    Arvie moved to strike Weinstein & Riley's reply brief as untimely filed.  (Docket Entry No. 60, at 4).
Arvie does not argue that Weinstein & Riley's delay in filing caused any prejudice or harm.  This motion is
denied.

[4]    Arvie states that he did not receive this letter until September 25, 2008.  (Docket Entry No. 63-5, Ex. 12,
Arvie Affidavit, ¶ 10).  Mara Seeley, a legal assistant with Weinstein & Riley, stated in her affidavit that the
letter was mailed on September 12, 2008, which Arvie does not controvert.  (Docket Entry No. 46-1, Ex. 1,
Mara Seeley Affidavit).  Arvie does not argue that the statute of limitations began to run when the letter was
received as opposed to when it was sent.  While the Fifth Circuit has not ruled on this issue, "the general rule
among the circuits appears to be that the statute of limitatios on FDCPA claims begins to run on the date of
the last opportunity for the putative debt collector to comply with the FDCPA."  *Ross v. North MS Health
Servs., Inc.*, No. 1:02 CV 390, 2006 WL 218173, at *2 (N.D. Miss. Jan. 27, 2006)*; see also Johnson v.
Riddle*, 305 F.3d 1107, 1113 n.4 (10th Cir. 2002); *Mattson v. U.S. W. Communications, Inc.*, 967 F.2d 259,

lawsuit with the attached notice on Weinstein & Riley letterhead occurred within the limitations period. In Weinstein & Riley's reply and Dodeka's motion for summary judgment, the argument is that the statute of limitations began running when the first collection letter was sent on April 24, 2007, and the state-court lawsuit, service of process, and attached notice are outside the limitations period because those acts relate to the same collection efforts and debt that were the subject of the letter sent in April 2007. Arvie responds that the state-court suit, service of process, and attached notice are discrete acts occurring within the limitations period and that under a "continuous violation theory," he may also assert claims arising from earlier acts outside the period.

"[D]istrict courts are not of a single view as to how the one-year statute of limitations for the FDCPA applies to a course of conduct, some of which occurred within the limitations period and some of which preceded it." *Joseph v. JJ MacIntyre Cos.*, 281 F. Supp. 2d 1156, 1159 (N.D. Cal. 2003); *see also Murphy v. MRC Receivables Corp.*, No. 06-0299-CV-W-NKL, 2007 WL 148823, at *2 (W.D. Mo. Jan. 12, 2007) ("Similar cases have been inconsistently decided by federal district courts"); *Tucker v. Mann Bracken, LLC*, Civil No. 1:08-CV-1677, 2009 WL 151669, at *2–3 (M.D. Pa. Jan. 21, 2009) (discussing cases). The Fifth Circuit has not directly addressed this issue. "[M]ost courts that have considered 15 U.S.C. § 1692k(d) have done so in the context of whether the limitations period begins when a collection letter that allegedly violates the Act is mailed or

---

261 (8th Cir. 1992); *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *Quesenberry v. Alliant Law Grp., PC*, No. 4:09-cv-414, 2010 WL 1189457, at *2 (E.D. Tex. Mar. 5, 2010). Arvie does, however, object to Mara Seeley's affidavit because Weinstein & Riley did not identify her as a person with knowledge in their initial disclosures or responses to interrogatories. (Docket Entry No. 47, at 6). Arvie also raises other discovery objections related to Weinstein & Riley's document production. (*Id.*). This court ruled on the discovery issues at a hearing held on July 26, 2010; these objections are denied as moot. (Docket Entry No. 66).

when it was received." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fl. 2000) (citing *Maloy v. Phillips*, 64 F.3d 607 (11th Cir. 1995)).

Dodeka and Weinstein & Riley urge this court to adopt the rule that "[n]ew communications . . . concerning an old claim . . . [do] not start a new period of limitations." *Fraenkel v. Messerli & Kramer*, No. Civ. 04-1072JRTFLN, 2004 WL 1765309, at *4 (D. Minn. July 29, 2004) (internal quotations omitted); *see also Nutter v. Messerli & Kramer*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007) (citing *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000)).  The court's decision in *Fraenkel* illustrates this approach.  In *Fraenkel*, the defendant sent two demand letters for attorneys' fees related to the plaintiffs' debt more than one year before the plaintiffs filed their federal FDCPA suit.  But less than one year before that date, the defendant had filed suit in state court to collect the attorneys' fees.  The court held that the statute of limitations began to run when the first demand letter was sent, not when the state-court suit was filed, and dismissed the federal FDCPA case.  *Fraenkel*, 2004 WL 1765309, at *3–4.  The court reasoned that both the demand letter and the lawsuit related to the same alleged wrong—the demand for attorneys' fees—and that the wrong accrued on the date of the first demand letter.  "The service of the complaint repeated the same information alleged on [the date of the first letter] . . . . The alleged violation accrued on or before [the date of the first letter].  The one-year statute of limitations ran before the instant lawsuit was filed." *Id.* at *4; *see also Kirscher v. Messerli & Kramer*, No. Civ. 05-1901PAMRLE, 2006 WL 145162, at *4 (D. Minn. Jan. 18, 2006) (finding that the FDCPA limitations period began when the debtor was first notified of the alleged misrepresentation, and a new limitations period did not begin when subsequent communications making the same alleged misrepresentation were sent); *Nutter*, 500 F. Supp. 2d at 1223 (finding that the FDCPA limitations period for all the alleged acts began

when the debtor was first notified of the alleged misrepresentation, not when the debt collector's employees made the same alleged misrepresentation in affidavits in a state-court proceeding to collect the debt); *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1009 (D. N.D. 2006) (finding that limitations for all the alleged acts began when the debtor disputed the demand letter, not each time the creditor reported the debt to credit-reporting entities).

Many of the cases applying this rule cite *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393 (S.D. N.Y. 1999).  *See Fraenkel*, 2004 WL 1765309, at *4; *Kirscher,* 2006 WL 145162, at *4; *Nutter*, 500 F. Supp. 2d at 1223.  In *Sierra*, the plaintiff alleged FDCPA violations in four letters the defendant sent demanding attorneys' fees in connection with debt-collection efforts.  The letters were sent outside the statute of limitations.  Within the limitations period, the defendant filed suit in state court to collect the attorneys' fees.  The plaintiff argued that his federal suit could proceed because the four letters and the state court suit were a "continuing violation" of the FDCPA.  Under this theory, the statute of limitations began with the last violation, the filing of the state-court suit. *Sierra*, 48 F. Supp. 2d at 395.  The court rejected the plaintiff's argument, finding that limitations barred the plaintiff's FDCPA claims.  The court reasoned that "[i]f plaintiff's theory were correct . . . his cause of action could be kept alive indefinitely because each new communication would start a fresh statute of limitations."  *Id.*  The court noted, however, that "[t]his is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred."  *Id.*

Like the plaintiff in *Sierra*, Arvie argues that the collection letters, the filing of the state-court suit, and the notice accompanying the state-court suit from Weinstein & Riley were a continuous violation of the FDCPA that began with the first collection letter sent in April 2007 and

ended when the state-court lawsuit was filed on November 24, 2008.  In support, Arvie cites *Joseph v. JJ MacIntyre Cos.*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003).  In *Joseph*, the plaintiff alleged that the defendant violated the FDCPA by calling the plaintiff "at odd hours and as often as three times a day over a year and half period even though [the plaintiff] had begun making . . . monthly payments towards her debt." *Id.* at 1158.  The plaintiff argued that she could sue the defendant for all this conduct, although much of it occurred more than a year before she filed suit.   The plaintiff cited the continuing violating doctrine applied in employment discrimination cases asserting a hostile work environment.  Under this doctrine, "'[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"  *Id.* at 1160 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  In *Joseph*, the court ruled that the doctrine could apply to debt collection claims when "the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." *Id.* at 1161.  The court found that the doctrine applied under the facts presented because the repeated phone calls were "a sufficient number of calls . . . to constitute a pattern of related conduct." *Id.* at 1162.  The court denied the defendant's motion for summary judgment based on limitations. *Id.*; *see also Tucker*, 2009 WL 151669, at *4 (finding that phone calls made within a year before the FDCPA suit was filed were not time barred and that calls made before the one-year period were actionable based on the continuing violation theory because the phone calls "continued unabated from 2005 to 2008" (internal quotation marks omitted)).

Alternatively, Arvie argues that if the continuing violations theory does not apply to allow him to sue based on the collection letters and phone calls he alleges occurred more than a year

before he filed this suit, he can still sue based on the filing of the state-court suit and accompanying notice.  Arvie argues that if these are discrete acts, they occurred within the statute of limitations and are not barred merely because they arose from the same debt and debt-collection activities as the earlier letters.  Under the discrete-acts approach, the claims based on acts occurring within the statute of limitations are not barred, but claims based on acts outside the statute are barred.  *See Murphy*, 2007 WL 148823, at *3 (allowing the plaintiff to proceed on four letters sent within the limitations period, but precluding the plaintiff from proceeding on three earlier time-barred letters); *Pittman v. J.J. MacIntyre Co. of Nev.*, 969 F. Supp. 609, 611 (D. Nev. 1997) (allowing claims for telephone calls made within the one-year limitations period but dismissing claims for calls made before that period); *Tucker*, 2009 WL 151669, at *4 (finding that phone calls made within the one-year period were not time-barred).  Additionally, courts have held that evidence of wrongful acts occurring outside the statute of limitations may be used to support claims based on acts occurring withing one year before suit was filed.  *See Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001) ("[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing.").  Similarly, courts have refused to dismiss all FDCPA claims if that one of the alleged acts occurred within the limitations period.  *See Kaplan*, 88 F. Supp. 2d at 1360 (finding that court may assert jurisdiction over all the plaintiff's FDCPA claims "based on the non-time-barred letters"); *Gruen v. Edfund*, No. C 09-00644 JSW, 2009 WL 2136785, at *1 (N.D. Cal. July 15, 2009) ("Plaintiff's FDCPA claim may proceed on the alleged actions that occurred within one year of filing this action.").

"The vast majority of federal cases that have considered the issue" have found that "[f]or statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an

16

individual basis." *Solomon*, 2010 WL 3069699, at *3 & n.3; *see also Purnell v. Arrow Fin. Servs.*, LLC, 303 F. App'x 297, 301–02 (6th Cir. 2008); *Brandon v. Fin. Accounts Servs. Team, Inc.*, 701 F. Supp. 2d 990, 995 (E.D. Tenn. 2010); *Craig v. Meyers*, No. C-1-09-31, 2009 WL 3418685, at *4 (S.D. Ohio Oct.19, 2009); *Ehrich v. RJM Acquisitions LLC*, No. 09 CIV. 2696(BMC)(RER), 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009); *Jones v. Baugher*, 689 F. Supp. 2d 825, 829–30 (W.D. Va. 2010); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008); *Murphy*, 2007 WL 148823, at *3; *Ortiz v. Accounts Receivable Mgmt., Inc.*, No. 09-80124-CIV, 2010 WL 547910, at *2 (S.D. Fla. Feb.12, 2010); *Pittman*, 969 F. Supp. at 611; *Puglisi v. Debt Recovery Solutions, LLC*, No. 08-CV-5024, 2010 WL 376628, at *3 (E.D.N.Y. Jan. 26, 2010); *Tucker*, 2009 WL 151669, at *4. This court adopts the majority approach.

Under the majority approach in FDCPA claims, Arvie's argument that a single act, within the limitations period, allows recovery not only for that act but also for all acts relating to the same debt and debt-collection efforts, no matter how long ago they occurred, is unpersuasive. Most courts have confined such an application of the continuous violation rule to the employment discrimination context. *See Schaffhauser v. Citibank (South Dakota) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009) ("Generally, our decisions have limited the continuing violation doctrine to the employment discrimination context. We decline to extend the doctrine to the circumstance of this [FDCPA] case."). Even within that context, the rule is generally limited to claims such as a hostile work environment, that may take the form of a pattern of conduct, any single act of which may by itself not give rise to a claim, but which over time reveals itself as a potential violation of the law. In such cases, the relevant questions include whether the alleged acts all involve the same type of discrimination; whether they are recurring or more in the nature of a discrete employment decision;

17

and the degree of permanence of the alleged discriminatory acts, to determine whether they should trigger an employee's awareness of, and duty to, assert her rights. *See, e.g.*, *Huckabay v. Moore*, 142 F.3d 233, 239–40 (5th Cir. 1998) (holding that a plaintiff's hostile environment claim constituted a continuing violation but that a demotion and a failure to promote were discrete occurrences that put the employee on notice that a cause of action had accrued and were therefore not continuing violations (citing *Berry v. Bd. of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983)). In the present case, Arvie asserts repeated separate occurrences, some of which occurred within the limitations period and some of which occurred before, and argues that all should be actionable. He has not presented a basis to conclude that the alleged violations within the limitations period are not only actionable, but that they also revive the expired limitations period for earlier acts. To the contrary, the record shows that Arvie knew the facts underlying the allegation of an FDCPA violation when he received the earlier collection letters and the alleged communications, which occurred outside the limitations period.

The defendants argue that because the first collection letter was sent more than a year before Arvie filed suit, limitations bars any claims, including those arising from collection efforts within the one-year period. As the Tenth Circuit noted in addressing a similar argument, the defendants' interpretation of the statute of limitations "would immunize debt collectors from later wrongdoing." *Solomon*, 2010 WL 3069699, at *3 n.3; *see also Murphy*, 2007 WL 148823, at *3 ("Precluding [the plaintiff] from bringing an FDCPA action against [the defendant] based on the four non-time-barred letters would effectively immunize debt collectors from liability for any collection letters so long as the first letter was sent over one year from the date a plaintiff filed suit."). The defendants cite cases holding that "[n]ew communications . . . concerning an old claim . . . [do] not start a new

period of limitations.'" *See, e.g.*, *Fraenkel*, 2004 WL 1765309, at *4 (citing *Sierra*, 48 F. Supp. 2d at 395). *Fraenkel*—and other similar cases—cited *Sierra*, which explicitly distinguished the facts presented from a case "where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred." *Sierra*, 48 F. Supp. 2d at 395. In the present case, Arvie has alleged such a case — a series of letters, only some of which are time-barred. *See also Gruen*, 2009 WL 2136785, at *2 (distinguishing *Sierra* by noting that "[i]n *Sierra*, the latest illegal act alleged by the plaintiff occurred outside the statute of limitations period); *Joseph*, 281 F. Supp. 2d at 1160 (noting that *Sierra* distinguished its facts from a series of threatening letters, only some of which are time-barred).

Under the discrete-act approach followed by the majority of the courts, Arvie's FDCPA claims against Dodeka and Weinstein & Riley arising from the filing of the state-court lawsuit, the service of process, and the Weinstein & Riley notice attached to the state-court complaint are not barred by limitations. The claims against Dodeka arising from the September 11, 2008 collection letter are also not barred by the statute of limitations. The claims against Weinstein & Riley arising from the September 11, 2008 collection letter are barred by the statute of limitations.[5] These are the only acts by Dodeka and Weinstein & Riley on which Arvie may base his FDCPA liability claims. The claims arising from the earlier collection efforts, including the letter sent on April 27, 2007 and the phone call on May 4, 2007 are barred by limitations for both defendants, although evidence of those efforts may be relevant to the claims that remain.[6]

---

[5]   Arvie also alleges that Weinstein & Riley sent a collection letter on August 8, 2009. Arvie acknowledges that he did not receive this letter.

[6]   "Where FDCPA claims are premised upon allegations of improper pursuit of debt collection, courts are split as to whether the FDCPA's one-year statue of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action . . . while others use the date on which the purported

The motion for summary judgment filed by Dodeka and Weinstein & Riley is granted in part and denied in part.

## IV.    The Motion for Summary Judgment Filed by Hilco

Hilco argues that it could not have violated the FDCPA within the statute of limitations because it made no debt collection efforts after settling Arvie's debt on January 26, 2007. Hilco also argues that even if its sale of Arvie's account to Hudson & Keyes violated the FDCPA, that sale occurred on March 6, 2007, again well outside the limitations period. In his response, Arvie asserts that the discovery rule or equitable tolling should apply to extend the limitations period until he knew or reasonably should have known of Hilco's involvement in selling the settled account to Hudson & Keyes without ensuring that it, subsequent purchasers, and their agents knew of the settlement. Arvie argues that he was not aware of Hilco's acts and omissions giving rise to an FDCPA violation until he read the affidavit attached to the December 3, 2008 service of process for Dodeka's state-court lawsuit. The affidavit stated that Hilco had sold Arvie's account to Hudson & Keyes. Hilco replies that the discovery rule does not apply to the FDCPA's statute of limitations and the facts do not justify applying either the discovery rule or equitable tolling. Hilco argues that Arvie is not entitled to an extension or tolling of limitations because he knew or should have known that Hilco had sold his account when he received the April 27, 2007 collection letter from Weinstein & Riley informing him that Dodeka owned his account. Arvie responds that in spite of the collection letter, he "could not have discovered or even contemplated before this time that Hilco had sold his account because every action and the facts that were presented to him—the settlement with

---

debtor was served with the complaint." *Schaffhauser*, 340 F. App'x at 130–31 (citing *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *Riddle*, 305 F.3d at 1113)). This issue need not be resolved because the filing of the state-court lawsuit, the service of process, and the attached notice are all within the statute of limitations.

FMA—the updated credit bureau report—the 1099c cancellation of debt, convinced [Arvie], and would convince any reasonable person, that Hilco had settled and closed the account."  (Docket Entry No. 63, at 21).

The Supreme Court has not adopted a uniform discovery rule.  *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001).  The Court has applied the discovery rule only in certain circumstances, such as fraudulent concealment, *Holmberg v. Almbrecht*, 327 U.S. 392, 397 (1946), and certain kinds of cases, such as medical malpractice, "where the cry for a discovery rule is loudest," *Rotella v. Wood*, 528 U.S. 549, 550 (2000).  When the statute creating the cause of action specifies a statute of limitations, the Court has looked to the statutory language and used rules of construction to determine whether the discovery rule should be recognized as an exception to limitations.  *TRW Inc.*, 534 U.S. at 27 (applying the rule that "when Congress enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent" (citing *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)).

Under *TRW Inc.*, "a discovery rule does not apply to statutes that key the start of the limitations period to 'the date of the occurrence of the violation.'"  *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (holding that discovery rule does not apply to the Equal Credit Opportunity Act, 15 U.S.C. § 1691, because its statute of limitations uses the "date of the occurrence of the violation" language).  The FDCPA statute of limitations runs "one year from the date on which the violation occurs."  Under *Archer*, this language would weigh against applying

the discovery rule to the FDCPA.  550 F.3d at 509.[7]  Arvie's claims against Hilco are barred by the statute of limitations unless he is entitled to equitable tolling.

Equitable doctrines such as tolling "are to be used sparingly."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Equitable tolling is permitted only "in rare and exceptional circumstances."  *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).  "'Equitable tolling  applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'"  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)), *cert. denied*, 529 U.S. 1057 (2000); *see also Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) ("[E]quitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)).  "The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."  *Id.*  The record does not present a basis to infer that Hilco actively misled Arvie about the cause of action or prevented him in some extraordinary way from asserting his rights.  Arvie argues that he did not file suit against Hilco until September 17, 2009 because the information he had available—the settlement letter from FMA Alliance, the collection letter from Weinstein & Riley, the settled-in-full notation by the credit bureau, and the Form 1099c sent from Hilco—did not clearly indicate to him that Hilco had sold his settled account.  But the information he had available did indicate that Hilco was no longer the creditor and that Dodeka now owned the account.  The facts in the summary

---

[7]   Arvie cites the Ninth Circuit's decision in *Mangum v. Action Collection Serv., Inc.*, for the proposition that "in general, the discovery rule applies to statutes of limitations in federal litigation."  575 F.3d 935, 940 (9th Cir. 2009).  *Archer,* however, states the applicable law in the Fifth Circuit.

judgment are not so extraordinary as to justify equitable tolling.  Arvie's claims against Hilco are barred under the statute of limitations.

This court has federal-question jurisdiction over Hilco because of the FDCPA claim and supplemental jurisdiction over the TDCPA and DTPA claims.  This court has dismissed Arvie's federal claims against Hilco.  The general rule in this circuit is to dismiss state-law claims when the federal claims are dismissed.  *Brookshire Bros.*, 554 F.3d at 602.  The factors that favor dismissal of the supplemental state-law claims apply.  Those state-law claims against Hilco are dismissed, without prejudice.

## V.    Conclusion

Weinstein & Riley's motion for summary judgment is granted as to Arvie's claims arising from acts before the state-court lawsuit was filed and denied as to Arvie's claims arising from the filing of that suit.  Dodeka's motion for summary judgment is granted as to Arvie's claims arising from acts before the September 11 collection letter and denied as to Arvie's claims arising before that collection letter.  Hilco's motion for summary judgment is granted.  The FDCPA claims against Hilco are dismissed with prejudice.  The state-law claims against Hilco are dismissed without prejudice.

SIGNED on October 25, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

23